U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED   JUL 16 2014
WILLIAM W. BLEVINS
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO.: 13-184 |
| v. | * | SECTION: "C" |
| CHRISTOPHER JOSEPH | * | VIOLATIONS:   21 USC § 841(a)(1) |
| | | 21 USC § 841(b)(1)(A) |
| | * | 21 USC § 846 |

\* \* \*

## FACTUAL BASIS

Should this matter have proceeded to trial, the government would have proved the following facts through the introduction of competent testimony and tangible exhibits to establish beyond a reasonable doubt the guilt of the defendant, **CHRISTOPHER JOSEPH**.

### CONSPIRACY TO DISTRIBUTE COCAINE

Beginning at a time unknown, but prior to September 1, 2012, and continuing through October 18, 2013, in the Eastern District of Louisiana and elsewhere, **CHRISTOPHER JOSEPH** did knowingly and intentionally combine, conspire, confederate, and agree with CHARLES HERRON a/k/a "CJ," ISAAC THOMPSON a/k/a "Fat Boy," and ANDREW BROWN a/k/a "Tank," and with other persons, to distribute and to possess with the intent to distribute cocaine hydrochloride.

1

The purpose of the conspiracy was that **JOSEPH** and THOMPSON, and others, would provide cash to purchase multi-kilogram quantities of cocaine from HERRON and others in the Houston, Texas, area with the intent to distribute the cocaine in the New Orleans, Louisiana, area. In furtherance of the conspiracy, **JOSEPH** and THOMPSON made or orchestrated multiple road trips from New Orleans to Houston and back, bringing cash to HERRON and others, receiving cocaine from HERRON and others, concealing the cocaine in a vehicle, and then returning with the vehicle to New Orleans. For some of these trips, **JOSEPH** and THOMPSON were present together with other co-conspirators, and at other times **JOSEPH** and THOMPSON directed other co-conspirators to make these trips without one or both of them. Among these other co-conspirators who made these road trips for the purpose of purchasing cocaine from Houston was ANDREW BROWN, a cocaine dealer in the New Orleans area. **JOSEPH** and THOMPSON further distributed cocaine to BROWN.

On or about October 24, 2012, **JOSEPH**, BROWN, and others, traveled to Houston and purchased approximately two kilograms of cocaine from HERRON, using cash provided by **JOSEPH** and THOMPSON.

In or around November 2012, **JOSEPH** and THOMPSON and others conducted a road trip to Houston with the intent to purchase three kilograms of cocaine for distribution in the New Orleans area. Outside THOMPSON's residence in New Orleans, **JOSEPH** placed a large amount of cash into a compartment under the hood of a rental vehicle. Two known persons then drove the rental vehicle to Houston, Texas, while THOMPSON, **JOSEPH**, and a third purchaser drove together in another vehicle. They all met later that day and swapped cars at a gas station in Houston, and THOMPSON, **JOSEPH**, and the third purchaser left in the rental car and traveled to HERRON's residence, where they purchased three kilograms of cocaine from HERRON. The

2

three purchasers returned to the gas station and swapped cars again with the two other known persons. They all met again back at THOMPSON's residence in New Orleans, where the cocaine was divided up amongst the three purchasers. THOMPSON gave two ounces of cocaine to the two known non-purchasing travelers in payment for making the trip.

Approximately two weeks later, in the same manner as the previous trip, the same individuals traveled again to Houston, Texas, with $150,000.00 cash for the purpose of purchasing approximately five kilograms of cocaine from HERRON, although THOMPSON arrived in Houston separately the following day. THOMPSON contributed approximately $50,000.00 of the purchase cash. HERRON was not readily available to meet, and another source was arranged. During an attempted transaction with the alternative source, however, **JOSEPH** was robbed of the $150,000.00 cash at gunpoint. THOMPSON had brought more cash with him the following day, and he purchased a kilogram of cocaine from HERRON. Upon their return to New Orleans, THOMPSON gave one ounce of cocaine to others for making the trip.

On or about December 26, 2012, **JOSEPH**, BROWN, and others, traveled to Houston for the purpose of purchasing approximately two kilograms of cocaine from HERRON, using cash provided by **JOSEPH** and THOMPSON.

On or about August 7, 2013, BROWN and MEGAN TONTH departed in separate vehicles from JOSEPH's residence to Houston, Texas, to purchase two kilograms of cocaine from HERRON with funds provided by **JOSEPH** and THOMPSON. TONTH drove DOMINIQUE HANDY's Chevrolet Malibu, and BROWN drove an Infiniti M35 belonging to **JOSEPH**.

On or about August 8, 2013, BROWN and TONTH went to a residence in the Houston area utilized by HERRON, where HERRON was present. BROWN purchased approximately

2,061 grams of cocaine from HERRON and concealed it under the hood of HANDY's Chevrolet Malibu. Later that day, TONTH and BROWN departed from HERRON's residence for New Orleans, TONTH again driving the Chevrolet Malibu and BROWN driving the Infiniti M35, for the purpose of delivering the cocaine to **JOSEPH** and THOMPSON in New Orleans. This cocaine was seized on the same day by law enforcement officers pursuant to a lawful search of the Chevrolet Malibu, and the seized substance tested positive for the presence of cocaine hydrochloride.

On or about August 8, 2013, law enforcement agents conducted a lawful search of **JOSEPH**'s residence located at 7433 Dogwood Drive in New Orleans, Louisiana. During the search, **JOSEPH** admitted in a voluntary statement to agents that he had a firearm located under the mattress in his bedroom.

During the search of 7433 Dogwood Drive, law enforcement agents located a firearm belonging to **JOSEPH** under the mattress in the main bedroom in the residence: a Hi-Point Firearms model JHP, .45 caliber semi-automatic pistol, bearing serial number X443675. The firearm was shown to JOSEPH on the scene, and he voluntarily admitted to owning the firearm.

## Drug Quantities

The Government and the defendant, **CHRISTOPHER JOSEPH**, agree and stipulate that **JOSEPH** should be held accountable for more than five (5) but less than fifteen (15) kilograms of cocaine hydrochloride, as this amount of cocaine was bought and sold by him and other members of the conspiracy as part of the overall scope of the drug conspiracy from September 1, 2012, through October 18, 2013.

### Prior Felony Drug Conviction

On or about March 30, 2001, the defendant, **CHRISTOPHER JOSEPH**, was convicted of a drug crime punishable by imprisonment for a term exceeding one year, to wit: a conviction in case number 411-492 "H" in the Criminal District Court for the Parish of Orleans, State of Louisiana, for Possession with Intent to Distribute Cocaine and Possession with Intent to Distribute Marijuana in violation of Title 40, Louisiana Revised Statutes, Sections 966(B)(1) and 967(B)(3).

### Limited Nature of Factual Basis

This proffer of evidence is not intended to constitute a complete statement of all facts known by the defendant, **CHRISTOPHER JOSEPH**, but rather is a minimum statement of facts intended to prove the necessary factual predicate for the guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for **JOSEPH**'s plea of guilty to the offense charged in Count 1 of the Superseding Indictment.

**APPROVED AND ACCEPTED:**

_____ 7/16/14  
CHRISTOPHER JOSEPH        (DATE)  
Defendant

_____ 7/16/14  
MICHAEL B. REDMANN        (DATE)  
Special Assistant United States Attorney

_____ 7/16/14  
JASON R. WILLIAMS         (DATE)  
Counsel for Christopher Joseph